**IN THE UNITED STATES DISTRICT COURT
FOR WESTERN DISTRICT OF VIRGINIA
Roanoke Division**

| | |
|---|---|
| WESTFIELD INSURANCE COMPANY<br>One Park Circle<br>P.O. Box 5001<br>Westfield Center, Ohio 44251-5001<br><br>        Plaintiff,<br><br>v.<br><br>DRAPER ADEN ASSOCIATES, INC.<br>    2206 South Main Street<br>    Blacksburg, Virginia 24060<br><br>    Following Conversion, Now Known As<br>    DRAPER ADEN ASSOCIATES, LLC<br>    3108 Trailwood Lane<br>    Toano, Virginia 23168-9627<br><br>    **Serve:**<br>    Corporation Service Company<br>    Registered Agent<br>    100 Shockoe Slip, Second Floor<br>    Richmond, Virginia 23219-4100<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 7:22-CV- 00605<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

<u>**COMPLAINT FOR DECLARATORY JUDGMENT**</u>

Plaintiff, Westfield Insurance Company (hereinafter "Westfield"), by counsel, pursuant to 28 U.S.C. § 2201, Rule 57 of the Federal Rules of Civil Procedure, and the Local Rules of the United States District Court for the Western District of Virginia, states as follows for its Complaint for Declaratory Judgment against defendant Draper Aden Associates, Inc., now known as "Draper Aden Associates, LLC" following a conversion effective April 21, 2022 ("Draper Aden" or "Defendant").

## PARTIES

1.      Plaintiff Westfield is a multi-line insurance carrier formed and existing under the laws of the State of Ohio, with its principal place of business located in Westfield Center, Ohio. Westfield, therefore, is a citizen of the State of Ohio and is not a citizen of Virginia.

2.      At all times relevant to this Action, Defendant Draper Aden Associates, Inc., was a corporation organized and operating under the laws of the Commonwealth of Virginia, with its principal office located at 2206 South Main Street, Blacksburg, Virginia, 24060.  On April 21, 2022, Draper Aden Associate, Inc. was converted to a limited liability company, but such conversion occurred many years after the effective dates of the relevant insurance policy and many years after the events giving rise to this Action occurred.  Pursuant to Virginia Code Section 13.1-755, Westfield may prosecute this action against the Defendant in its corporate name, and need not name the members of the limited liability company following conversion.  Virginia Code Ann. § 13.1-755.  Nevertheless, upon information and belief, no member of Draper Aden Associates, LLC is a citizen of Ohio.

3.      The Defendant, an engineering firm, is also one of numerous defendants in an underlying action (the "Underlying Action") styled The Commonwealth of Virginia and Virginia Commonwealth University v. Draper Aden Associates, Inc., et al., Case No. 760CL21000923-00, currently pending in the Circuit Court for the City of Richmond.  The Defendant has tendered the defense of the Underlying Action to Westfield.  The Underlying Action is the successor litigation to an Action that was dismissed by the Circuit Court for the City of Richmond (the "Initial Underlying Action") styled The Commonwealth of Virginia ex rel. David A. Von Moll, Comptroller v. HKS, Inc., et al, Case No. CL17-004381-8, filed on September 15, 2017, in the Circuit Court for the City of Richmond.  The Defendant tendered the defense of the Initial

2

Underlying Action to Westfield as well. Westfield declined the tender of the Underlying Action and Initial Underlying Action and denied the Defendant's Claim.

4.     The Defendant now has requested a reconsideration of its tender of defense and potential indemnification in connection with the Underlying Action and the Initial Underlying Action (together, the "Actions").

5.     Westfield agreed to reconsider the Defendant's Claim and the tender of defense of the Actions, and now seeks a declaration of its obligations under the Policy, as described below.

## JURISDICTION AND VENUE

6.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

7.     The venue of this action is properly predicated on 28 U.S.C. § 1391 and Rules 2(a) and 2(b) of the Local Rules of the U.S. District Court for the Western District of Virginia, in that jurisdiction is founded on diversity of citizenship and this action is brought in the judicial district and division in which a substantial part of the events or omissions giving rise to the claim occurred; in which the defendant resides or does business; and/or in which the defendant is subject to personal jurisdiction; including but not limited to the location of the Defendant's principal place of business at the time the relevant insurance policy was issued: 2206 South Main Street, Blacksburg, Virginia 24060.

## BACKGROUND

8.     Plaintiff Westfield issued a commercial package insurance policy to Defendant Draper Aden Associates, Inc., bearing policy number CMM 5 132 771 effective from February 1, 2013, through February 1, 2014 (the "Policy").

3

9.     A certified copy of the Policy is attached hereto as **Exhibit 1** and is incorporated by reference.

10.     The incident that gave rise to the Actions occurred on or about November 25, 2013, when a 10" water line was ruptured (the "Water Line Breach") during the construction of a utility tunnel as part of the construction of a pediatric facility (the "Project") for the Virginia Commonwealth University Health System Authority (the "Authority").

11.     The Water Line Breach resulted in water damage to a nearby building on the VCU campus known as Sanger Hall.

12.     Draper Aden did not provide notice of the Water Line Breach to Westfield until nearly four years later, on August 3, 2017.

13.     On or about August 3, 2017, Draper Aden notified Westfield for the first time of the Water Line Breach.

14.     Westfield assigned claim number 0001817025 to the Claim and began to evaluate the Claim.

15.     On or about September 15, 2017, the Commonwealth of Virginia *ex rel.* David A. Von Moll, Comptroller, filed the Initial Underlying Action.

16.     An accurate and complete copy of the Initial Underlying Action, including all exhibits thereto, is attached as **Exhibit 2** and is incorporated by reference.

17.     Draper Aden tendered the defense of the Initial Underlying Action to Westfield.

18.     Westfield determined that it had no duty to defend or indemnify Draper Aden in connection with the Initial Underlying Action.

19.     Westfield issued a denial letter to Draper Aden dated January 16, 2018.

20.     Upon information and belief, Draper Aden also maintained a policy of Professional

4

Liability Insurance with CNA Insurance at all times relevant to the matters addressed herein.

21.     Upon information and belief, CNA Insurance provided a defense to Draper Aden in the Initial Underlying Action by and through the firm of Woods Rogers, PLC, and Attorney Christopher Stevens.

22.     By Order entered April 23, 2019, the Circuit Court for the City of Richmond dismissed the Initial Underlying Action on the grounds that the Comptroller, David A. Von Moll, did not have standing to bring the Initial Underlying Action.

23.     On or about August 16, 2021, the Commonwealth of Virginia and Virginia Commonwealth University filed the Underlying Action against a smaller number of the original defendants in the Initial Underlying Action, including Draper Aden.

24.     An accurate and complete copy of the Underlying Action, including all exhibits thereto, is attached as **Exhibit 3** and is incorporated by reference.

25.     Again, Draper Aden did not directly provide notice of the Underlying Action to Westfield.

26.     However, Westfield received correspondence from Amanda Sirk, Esquire, an attorney for CNA Insurance, seeking contribution to defense costs for Draper Aden in connection with the newly-filed Underlying Action.

27.     On behalf of CNA, Attorney Sirk advised Westfield that CNA is the professional liability insurance carrier for Draper Aden, and as it did in the Initial Underlying Action, was and is currently providing a defense to Draper Aden in the Underlying Action.

28.     Westfield reopened the Claim to evaluate the Underlying Action and CNA's request for contribution toward the defense of the Underlying Action.

29.     Westfield renewed its denial of the Claim to Draper Aden by letter dated June 2,

2022.

30.     On or about October 18, 2019, Draper Aden Associates merged with "Pre-69 Company V (A NC Corp Not Qualified in VA)" (the "Merger").

31.     Draper Aden did not notify Westfield of the Merger, either before or after the Merger.

32.     On or about April 21, 2022, Defendant "Draper Aden Associates, Inc." converted to "Draper Aden Associates, LLC" (the "Conversion").

33.     Draper Aden did not notify Westfield of the Conversion, either before or after the Conversion.

34.     By letter dated July 26, 2022, Attorney Marc Faecher of TRC Companies, Inc. sent a letter to Westfield which provided the first notice to Westfield of the Conversion, and which sought a reconsideration of Westfield's decision to deny the Claim and to decline the tender of defense of the Actions.

35.     Westfield requested documentation from Attorney Faecher to establish and verify the assertions made by TRC Companies, Inc. regarding its interest in the Claim, the Actions, the Policy, and TRC's relationship with Draper Aden.

36.     On or about September 13, 2022, Westfield received correspondence from Timothy Cretney, prior CFO, VP, and Treasurer of Draper Aden Associates, Inc., and current Director of Finance, Environmental Sector, for TRC Companies, Inc.  Mr. Cretney's correspondence did not provide any of the documentation that Westfield had sought from Attorney Faecher regarding the corporate transaction(s) by which TRC Companies, Inc. acquired Draper Aden, but as a former officer of the defunct corporation, did authorize Attorney Faecher to act on behalf of the insured, Draper Aden Associates, Inc., in connection with the Policy, the Claim, and the Actions.

6

37.    Westfield has reopened its file in light of Mr. Cretney's request.

38.    Westfield has at all times evaluated, and continues to evaluate, the Claim under a complete and continuing reservation of rights.

## THE WESTFIELD INSURANCE POLICY

39.    The Westfield Policy is a Commercial Package Policy which includes in relevant part a Commercial General Liability ("CGL") Coverage Part and a Commercial Umbrella Coverage Part.

40.    The Policy provides the following insuring agreement between Westfield and Draper Aden, with respect to CGL coverage, pursuant to the terms, conditions, exclusions, limitations, definitions, and other provisions of the Policy:

**SECTION 1 – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.  Insuring Agreement**

   a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

   **(1)**    The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

   **(2)**    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage C.

7

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverage **A** and **B**.

b.  This insurance applies to "bodily injury" and "property damage" only if:

(1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"

(2)  The "bodily injury" or "property damage" occurs during the policy period; …

**Exhibit 1,** Form CG 00 01 12 07, p. 1 of 16.

41.  The Umbrella coverage part includes the following insuring agreement, pursuant to the terms, conditions, exclusions, limitations, definitions, and other provisions of the Policy:

**SECTION 1 – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.  Insuring Agreement**

a.  We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages, even if the "suit" is groundless, false or fraudulent, when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted.  When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any claim or "suit" for which we have the duty to defend.  But:

8

**(1)**    The amount we will pay for the "ultimate net loss" is limited as described in Section **III** – Limits Of Insurance; and

**(2)**    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverage **A** and **B**.

b.    This insurance applies to "bodily injury" and "property damage" only if:

(1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"

(2)    The "bodily injury" or "property damage" occurs during the policy period; …

**Exhibit 1,** Form CU 00 01 12 07, p. 1 of 17, as amended by Form CU 01 57 08 09 (Virginia Changes).

42.    The CGL Coverage Part of the Policy is subject to a specific endorsement which excludes coverage for property damage "arising out of" the rendering or failure to render "professional services:"

The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage A – Bodily Injury And Property Damage Liability**….:

**Exclusion – Engineers, Architects or Surveyors Professional Liability**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineers, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

9

Professional services include:

1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2. Supervisory, inspection, architectural or engineering activities.

**Exhibit 1,** Form No. CG 22 43 07 98 (the "Professional Services Exclusion").

43. The Umbrella Coverage Part of the Policy is also subject to a Professional Services Exclusion, which provides in relevant part as follows:

**2. Exclusions**

This insurance does not apply to:

**s. Expected or Intended Injury**

"Bodily injury" or "property damage" due to the rendering or failure to render any professional service. This includes but is not limited to:
...

(2) Preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager;

(3) Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager;

(4) Engineering services, including related supervisory or inspection services;
...

**Exhibit 1,** Form CU 00 01 12 07, p. 5 of 17 (the "Umbrella Professional Services Exclusion").

44.     The Policy also includes a number of other exclusions, including but not limited to the following:

**2.      Exclusions**

This insurance does not apply to:

**a.      Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. …

**b.      Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

**(1)**     That the insured would have in the absence of the contract or agreement; or

**(2)**     Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)**     Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)**     Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

.  .  .

**j.      Damage to Property**

11

"Property damage" to:

. . .

**(5)**     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)     That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.

. . .

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k.     Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.     Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**This exclusion only applies to that particular part of "your work" out of which the damage arises.**

**Exhibit 1,** Form CG 00 01 12 07, pp. 13-16 of 16, as amended by Form CG 70 94 VA 08 05, p. 6 of 6 (definition of "Loss").  See also **Exhibit 1,** Umbrella Coverage Part, Form CU 00 01 12 07, pp. 2-4 of 17 (Parallel Exclusions 2(a), 2(b), 2(m), 2(n), and 2(o)).

45.     The Policy includes definitions for a number of operative terms in the Policy,

including but not limited to the following:

### SECTION V – DEFINITIONS

**9.**     "Insured Contract" means:

...

f.     That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

...

**(2)**     That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)**     Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)**     Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)**     Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

...

**13.**     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

…

16.     "Products-completed operations hazard":

    **a.**    Includes all "bodily injury" and "property damage" occurring away from the premises you own or rent and arising out of "your product" or "your work" except:

        **(1)**    Products that are still in your physical possession; or

        **(2)**    Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

            **(a)**    When all of the work called for in your contract has been completed.

            **(b)**    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            **(c)**    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

            Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

…

17.     "Property damage" means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

14

    **b.**    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

…

**18.**    "Suit" means a civil proceeding in which damages because of "bodily injury" or "property damage" [. . .] to which this insurance applies are alleged…

...

**22.**    "Your work":

    **a.**    Means:

        **(1)**    Work or operations performed by you or on your behalf; and

        **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

    **b.**    Includes:

        **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work;" and

        **(2)**    The providing of or failure to provide warnings or instructions.

**23.**    "Loss" means unintentional damage or destruction but does not include disappearance, theft, or loss of use.

**Exhibit 1,** Form CG 00 01 12 07, pp. 13-16 of 16, as amended by Form CG 70 94 VA 08 05, p. 6 of 6 (definition of "Loss") and Form CG 24 26 07 04 (definition of "Insured Contract"). See also **Exhibit 1,** Umbrella Coverage Part, Form CU 00 01 12 07, pp. 2-4 of 17 (Definitions Section **V.,** Definitions 9 (Contractual Liability), 13 (Occurrence), 17 (Products-Completed Operations Hazard), 18 (Property Damage), 21 (Suit), and 28 (Your Work). See also **Exhibit 1,** Form CU 01 57 08 09, p. 2 of 2 (amending definition of Insured Contact to deleted Exceptions 2 and 3).

46.     The Umbrella Coverage Part also includes additional definitions that apply only to the Umbrella Coverage Part, including but not limited to the following:

19.     "Retained limit" means the available limits of "underlying insurance" scheduled in the Declarations or the "self-insured retention", whichever applies.

20     "Self-insured retention" means the dollar amount listed in the Declarations that will be paid by the insured before this insurance becomes applicable only with respect to "occurrences" or offenses not covered by the "underlying insurance". The "self-insured retention" does not apply to "occurrences" or offenses which would have been covered by "underlying insurance" but for the exhaustion of applicable limits.

...

23.     "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.

24.     "Underlying insurance" means any policies of insurance listed in the Declarations under the Schedule of "underlying insurance".

25.     "Underlying insurer" means any insurer who provides any policy of insurance listed in the Schedule of "underlying insurance".

**Exhibit 1,** Umbrella Coverage Part, Form CU 00 01 12 07, pp. 17 od 17.

47.     By enumerating certain provisions of the Policy, Westfield does not waive its right to assert any terms, conditions, limitations, exclusions, definitions or any other provisions of the Policy.  Westfield reserves the right to assert any other specific provisions of the Policy to the extent they become relevant.

48.     Westfield files the instant Complaint for Declaratory Judgment asking this Court to

declare that Westfield has no duty under the Policy to defend and/or indemnify Draper Aden or any other person or entity in connection with the Claim and/or the Actions.

49.     An actual, immediate controversy exists between Westfield and the Defendant to determine the obligations of the Parties arising out of the Claim and/or the Actions.

## FIRST REQUEST FOR DECLARATORY JUDGMENT
### Professional Services Exclusion

50.     Westfield restates the preceding and following allegations of this Complaint for Declaratory Judgment as if fully set forth herein.

51.     The Professional Services Exclusion of the Policy states that the Policy "does not apply to … 'property damage" … arising out of the rendering or failure to render any professional services by [Draper Aden] or any engineer, architect, or surveyor who is either employed by you or performing work on your behalf in such capacity."  **Exhibit 1,** Form CG 22 43 07 98.  See also **Exhibit 1,** Form CU 00 01 12 07, p. 5 of 17 (Umbrella Professional Services Exclusion).

52.     The Professional Services Exclusion defines the term "professional services" to mean:

> 1.     The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and
>
> 2.     Supervisory, inspection, architectural or engineering activities.

Id..

53.     The Complaint in the Underlying Action describes Draper Aden as a "consulting engineering firm providing a wide range of site development, infrastructure, and utility *engineering services."* **Exhibit 3**, p. 4, ¶8 (emphasis added).

17

54.     The Complaint in the Underlying Action describes Draper Aden's role in the

overall project as follows:

> "The [Virginia Commonwealth University Health System
> Authority] issued a purchase order to Draper Aden on June 21, 2011,
> for certain *civil engineering consulting services* (the "Draper Aden
> PO").  On November 9, 2012, Draper Aden proposed extended those
> services to include *additional civil engineering consulting services.*
> Based on [the Program Manager's] recommendation, the Authority
> approved Draper Aden's proposal on November 12, 2012.  *The
> services provided under the extended Draper Aden PO including
> investigating, locating, and assessing the general condition of
> existing utilities impacted by the Project.*"

**Exhibit 3**, p. 7, ¶20 (emphasis added).

55.     In a section entitled "Draper Aden's Surveys & Subsurface Utility Engineering,"

the Complaint in the Underlying Action makes the following allegations regarding Draper Aden's

execution of the duties it undertook as part of the Project:

> 52.     On November 9, 2012, Draper Aden submitted a proposal to the
> Authority under its existing purchase order for "Surveys and
> Subsurface Utility Engineering" for the "Proposed Tunnel between
> Sanger & Tunnel I" (the "DA Proposal").

> 53.     Draper Aden described a detailed procedure that would allow it to
> provide information regarding utility size, type, general condition,
> and precise location, including vertical position.  Draper Aden also
> proposed to locate the end connections of the proposed tunnel. (*Id.*
> at 1-2).

> 54.     JLL reviewed the DA Proposal.  In a November 12, 2012 letter to
> the Authority, JLL recommended the Authority approve the DA
> Proposal.  The Authority approved it on November 12, 2012.

> 55.     Upon information and belief, Draper Aden excavated one, and
> only one, of the four test holes included in its proposal.  Draper
> Aden's investigative efforts focused solely on locating and
> assessing the 16" x 24" combined sewer line which Draper Aden's
> October 31, 2012 cross section showed within inches of Tunnel 2's
> crown.

56.     Upon information and belief, Draper Aden did not excavate a test hole and determine the size, type, general condition, and precise location of the 10" water line at the anticipated crossing of Tunnel 2, even though the water line was an active, pressurized water main posing a much bigger risk of damage to person and property than the gravity sanitary lien, and even though locating the water line at the centerline of the proposed Tunnel 2 was an express part of Draper Aden's work for the Authority.

**Exhibit 3,** pp. 14-15.

56.     With respect to the specific allegations against Draper Aden, the Complaint identifies all such actions as the "failure" to meet Draper Aden's engineering duties under its contract on the Project, as follows:

## COUNT I – NEGLIGENCE
### Draper Aden Associates, Inc.

92.     The Plaintiffs incorporate the preceding paragraphs, as though fully set forth.

93.     Draper Aden owed an independent duty to the Plaintiffs to prevent injury to Plaintiffs' property during its performance of services for the Project.

94.     Draper Aden breached its respective duties to Plaintiffs, jointly and severally, with Skanska, JLL, Bradshaw, RMF, Rivenus, and Balenske, by and through their agents, servants, employees, and subconsultants, by failing to exercise the level of skill, knowledge, care, and judgment required *of a reasonably prudent provider of similar services*.

95.     Draper Aden's negligent acts and omissions include:

   a.     failure to ascertain, understand, and/or adequately consider the local conditions of the infrastructure located underneath the surface of 12th Street,

   b.     failure to field verify information and coordinate it with the requirements of the Tunnel 2 design and construction,

19

c.      failure to examine the soil conditions where Tunnel 2 was to be constructed, particularly where that soil was known to be supporting existing utilities,

d.      failure to field locate the 10" water line,

e.      failure to investigate and assess the condition of the 10" water line,

f.      failure to recommend protective measures prior to tunneling activities such as providing support and protection for the 10" water line, shutting off the water flow, and/or replacing the existing pipe,

g.      failure to identify and properly plan and design for the risks created by designing and constructing a new 8'-0" diameter opening in the side of Sanger Hall and connecting it directly to a tunnel and excavation operations taking place directly underneath the City of Richmond's old infrastructure,

h.      failure to properly analyze data such as site surveys and conceptual plans applicable to the design and construction of the Utility Pathway and Tunnel 2,

i.      failure to recommend additional investigation, surveys, tests, and analyses appropriate for the design and construction of the Utility Pathway and Tunnel 2,

j.      failure to identify constructability problems with the Tunnel 2 design and recommend alternative solutions,

k.      failure to recommend adequate shoring, bracing, planking, and other equipment necessary to prevent disturbance of soil supporting existing utilities above Tunnel,

l.      failure to perform construction-phase services to guard against Tunnel 2 work not performed in a competent and workmanlike manner,

    m.  failure to consider the material distinction between excavating for a deep Tunnel 1 versus shallow Tunnel 2, and

    n.  failure in other respects to avoid damage to *Plaintiff's* property.

  96.  Draper Aden's negligent acts and omissions were the proximate cause of *Plaintiffs'* injury resulting in damages in the amount of not less than $7,642,685.

**Exhibit 3,** pp. 21-33.

  57.  The Complaint in the Underlying Action fails to identify any action on the part of Draper Aden that falls outside of the definition of "professional services," because all of Draper Aden's "work" on the Project is described in the Complaint as "engineering services" that Draper Aden undertook under its contract and/or "engineering services" that Draper Aden failed to perform and, as such, fall within the Policy definition of "professional services."

  58.  All damages alleged in the Claim and the Actions "arise out of" Draper Aden's "engineering services," and as such are excluded under the Professional Services Exclusion and the Umbrella Professional Services Exclusion.

  59.  A controversy of a justiciable nature presently exists between the parties, which demands a declaration by the Court, so that Westfield may have its rights and duties under the Policy determined and avoid the possible accrual of damages.

  60.  Accordingly, Westfield seeks a declaration from this Court that Westfield has no duty to defend and/or indemnify Draper Aden or anyone else for any damages related to the Claim or the Actions on the grounds that all of Draper Aden's work on the Project fall within the Policy definition of the term "professional services," and all damages alleged in the Actions against

Draper Aden arise out of Draper Aden's "professional services" and are thus excluded under the Policy.

**SECOND REQUEST FOR DECLARATORY JUDGMENT**
**The Contractual Liability Exclusion**

61.     Westfield restates the allegations in the preceding and following paragraphs of this Complaint for Declaratory Judgment as if fully set forth herein.

62.     The Policy does not apply to "property damage" for which Draper Aden is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  **Exhibit 1**, Form CG 00 01 12 07, p. 2 of 16; Form CU 00 01 12 07, p. 2 of 17.

63.     The Draper Aden Proposal, as described in the Actions, is a "contract or agreement" as described in the Policy.

64.     The Draper Aden Proposal is not an "insured contract" as that term is defined in the Policy.  **Exhibit 1**, Form CG 00 01 12 07, p. 13 of 16, as modified by Form CG 24 26 07 04; **Exhibit 1**, Form CU 00 01 12 07, p. 15 of 17.

65.     Moreover, under the CGL Coverage Part, the term "insured contract" specifically "does not include that part of any contract or agreement:"

> (2)     That indemnifies an architect, engineer or surveyor for injury or damage arising out of:
>
> > (a)     Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or
> >
> > (b)     Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or
>
> (3)     Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

22

**Exhibit 1**, Form CG 00 01 12 07, pp. 13-14 of 16.

66.     Accordingly, the Contractual Liability Exclusion operates to bar coverage for the damages alleged in the Claim and the Actions.

67.     A controversy of a justiciable nature presently exists between the parties, which demands a declaration by the Court, so that Westfield may have its rights and duties under the Policy determined and avoid the possible accrual of damages.

68.     Accordingly, Westfield seeks a declaration from this Court that Westfield has no duty to indemnify Draper Aden or anyone else for any alleged damages on the grounds and to the extent that the Contractual Liability Exclusions applies.

### THIRD REQUEST FOR DECLARATORY JUDGMENT
#### "Occurrence"

69.     Westfield restates the allegations in the preceding and following paragraphs of this Complaint for Declaratory Judgment as if fully set forth herein.

70.     The Policy only obligates Westfield to defend and/or indemnify its insured for "property damage" caused by an "occurrence." **Exhibit 1,** Form CG 00 01 12 07, p. 1 of 16; Form CU 00 01 12 07, p. 1 of 17.

71.     The term "occurrence" is defined in the Policy to include an "accident." **Exhibit 1,** Form CG 00 01 12 07, p. 15 of 16; Form CU 00 01 12 07, p. 16 of 17.

72.     Assuming that the allegations of the Underlying Actions are true (as Westfield is required to when evaluating a duty to defend), such allegations describe a breach of Draper Aden's contract with the Authority, an administrative arm of the Plaintiffs, the Commonwealth of Virginia and Virginia Commonwealth University.

73.     To avoid turning every breach of contract into a tort, the Supreme Court of Virginia "enunciated the rule that, in order to recover in tort, the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." Augusta Mutual Ins. Co. v. Mason, 274 Va. 199, 205, 645 S.E.2d 290 (2007).

74.     Under Virginia's "source of duty" rule, allegations of negligent performance of contractual duties are not actionable in tort.  Richmond Metro. Auth. v. McDevitt St. Bovis, 256 Va. 553, 558-59, 507 S.E.2d 344, 347 (1998); W. World Ins. Co. v. Air Tech, Inc., No. 7:17cv518, 2019 U.S. Dist. LEXIS 53683, 2019 WL 14434666, at *7 (W.D. Va. Mar. 29, 2019); Pa. Nat'l Mut. Cas. Ins. Co. v. River City Roofing, LLC, Civil Action No. 3:21cv365-HEH, 2022 U.S. Dist. LEXIS 73676, at *15-16 (E.D. Va. Apr. 21, 2022). See also Reynolds v. USAA Life Ins. Co., Civil Action No. 3:22-cv-577-HEH, 2022 U.S. Dist. LEXIS 181506, at *8 (E.D. Va. Oct. 3, 2022) (quoting Sensenbrenner v. Rust, Orling & Neale, Architects, Inc., 236 Va. 419, 374 S.E.2d 55, 58, 5 Va. Law Rep. 1040 (Va. 1988) ("Recovery in tort is limited to a breach of a duty to take care for the safety of the person or property of another.)

75.     The Complaint in the Underlying Action does not allege any action by Draper Aden that is separate and independent from the duties Draper Aden assumed under its contract with the Authority, an administrative arm of the Plaintiffs, Commonwealth of Virginia and/or Virginia Commonwealth University.

76.     As described in the Underlying Actions, Draper Aden did not participate in the construction of the utility tunnel, and was not present at the construction site on the date of the Water Line Breach.

77.     The Underlying Actions allege only that Draper Aden negligently failed to comply with its contractual obligations to perform engineering services under its Purchase Order contract.

78.     Accordingly, the negligence claim against Draper Aden is of no force or effect under Virginia law. Frye v. B&B Construction, 85 Va. Cir. 475, 479 (Va. Cir. Roanoke 2012).

79.     A controversy of a justiciable nature presently exists between the parties, which demands a declaration by the Court, so that Westfield may have its rights and duties under the Policy determined and avoid the possible accrual of damages.

80.     Accordingly, Westfield seeks a declaration from this Court that Westfield has no duty to indemnify Draper Aden or anyone else for any damages related to the Claim or the Actions on the grounds and to the extent that the Underlying Actions allege damages that do not result from an "occurrence."

## FOURTH REQUEST FOR DECLARATORY JUDGMENT
### Untimely Notice

81.     Westfield restates the allegations in the preceding and following paragraphs of this Complaint for Declaratory Judgment as if fully set forth herein.

82.     The incident involving the Water Line Breach occurred on or about November 25, 2013.

83.     Draper Aden did not notify Westfield of the breach of the water line until August 2017.

84.     The Policy includes conditions which require Draper Aden to "see to it that [Westfield is] notified as soon as practicable of an "occurrence" or an offense which may result in a claim." **Exhibit 1**, Form CG 00 01 12 07, p. 11 of 16; **Exhibit 1**, Form CU 00 01 12 07, p. 12 of 17.

85.     Draper Aden's failure to notify Westfield of the Water Line Breach for nearly four years violates the Policy Duties in the Event of Occurrence, Offense, Claim or Suit.

86.     A failure to provide notice for nearly four years is untimely as a matter of Virginia law.

87.     Even if a delay of four years is not untimely notice as a matter of law, Westfield has been prejudiced in its investigation of the Claim and Actions by the extreme delay in providing notice.

88.     Moreover, Draper Aden failed to provide any direct notice to Westfield of the Underlying Action, but instead Westfield obtained such notice from Attorney Sirk at CNA Insurance.

89.     A failure to provide notice of suit violates the Policy Duties in the Event of Occurrence, Offense, Claim or Suit.

90.     A controversy of a justiciable nature presently exists between the parties, which demands a declaration by the Court, so that Westfield may have its rights and duties under the Policy determined and avoid the possible accrual of damages.

91.     Accordingly, Westfield seeks a declaration from this Court that Westfield has no duty to indemnify Draper Aden or anyone else for any damages related to the Claim or the Actions on the grounds and to the extent that the damages sought are specifically excluded as a result of Draper Aden's failure to provide timely notice of the facts giving rise to the Claim and the Actions and failure to provide copies of the Underlying Action directly to Westfield.

### FIFTH REQUEST FOR DECLARATORY JUDGMENT
**Westfield Owes No Duty of Defense or Indemnification to Any Successor Corporation or
Limited Liability Company to Draper Aden Associates, Inc.**

92.     Westfield restates the allegations in the preceding and following paragraphs of this Complaint for Declaratory Judgment as if fully set forth herein.

93.     The Common Policy Conditions include the following condition:

26

**F.      Transfer Of Your Rights And Duties Under This Policy**

>       Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

**Exhibit 1,** Form IL 00 17 11 98, p. 1 of 1.

94.      Draper Aden failed to notify Westfield, whether in writing or otherwise, prior to the Merger referenced in Paragraph 30 supra.

95.      Draper Aden failed to notify Westfield, whether in writing or otherwise, prior to the Conversion of Draper Aden to a limited liability company, as referenced in Paragraph 32, supra.

96.      Even if Westfield owes any duty to defend and/or indemnify Draper Aden Associates, Inc. in connection with the Claim or the Actions (which Westfield denies), Westfield owes no obligation under the Policy to any person or entity other than its named insured, Draper Aden Associates, Inc., including but not limited to Draper Aden Associates, LLC, and/or TRC Companies, Inc.  Va. Code Ann. §13.1-755.

97.      A controversy of a justiciable nature presently exists between the parties, which demands a declaration by the Court, so that Westfield may have its rights and duties under the Policy determined and avoid the possible accrual of damages.

98.      Accordingly, Westfield seeks a declaration from this Court that, even if Westfield owes any duty under the Policy to Draper Aden Associates, Inc. (which Westfield denies), Westfield has no duty of any kind under the Policy to any person or entity other than Draper Aden Associates, Inc., including but not limited to Draper Aden Associates, LLC and/or TRC Companies, Inc., for any damages related to the Claim or the Actions.

## RESERVATIONS

99.     Westfield reserves all of its rights under the Policy and applicable law.  By seeking a declaratory judgment based on the foregoing provisions of the Policy, Westfield does not waive any potential coverage defenses pursuant to any terms, conditions, limitations, exclusions, definitions, or any other provision of the Policy.  Developments in connection with this Complaint, the Claim, and/or the Actions may render additional defenses to coverage ripe for judicial determination.

100.    Westfield reserves the right to amend its Complaint for Declaratory Judgment as additional and/or more specific information becomes available.

## PRAYER FOR RELIEF

WHEREFORE, Westfield respectfully requests that this Court enter a judgment declaring the rights and obligations of the parties under the Policy, including, but not limited to, the following:

(a)    that Westfield has no duty under the Policy to indemnify Draper Aden or any other person or entity for the damages alleged in the Actions;

(b)    that Westfield has no duty to defend Draper Aden in the Actions;

(c)    that Westfield has no duty of any kind to any person or entity other than its named insured, Draper Aden Associates, Inc., under the Policy; and

(c)    that this Court provide such further and supplemental relief as it deems necessary and proper.

Done this 21st  day of October, 2022.

Respectfully submitted,

WESTFIELD INSURANCE COMPANY
BY MIDKIFF, MUNCIE & ROSS, P.C.


By: /s/ Diane U. Montgomery

Diane U. Montgomery (Va. Bar No. 31850)
Robert Tayloe Ross (Va. Bar No. 29614)
Midkiff, Muncie & Ross, P.C.
300 Arboretum Place, Suite 420
Richmond, VA  23236
(804) 560-9600 (phone)
(804) 560-5997 (fax)
E-mail: dmontgomery@midkifflaw.com
E-mail:  rross@midkifflaw.com
*Counsel for Westfield Insurance Company*